**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DUAL-TEMP OF ILLINOIS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 09-cv-595 |
| | ) | |
| HENCH CONTROL CORPORATION, | ) | Judge Robert M. Dow, Jr. |
| HENCH CONTROL, INC., CAESAR-VERONA, | ) | |
| INC., JOHN HENCH, and ALEX DANEMAN, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this case, Plaintiff, Dual-Temp of Illinois, Inc. filed a six-count complaint against Defendants Hench Control Corporation ("Hench Control I"), Hench Control, Inc. ("Hench Control II"), Caesar-Verona, Inc. ("Caesar"), John Hench ("Hench"), and Alex Daneman ("Daneman") alleging violations of state contract and tort law. The Court has jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332.

Before the Court is Defendant Hench's motion to dismiss Count V of the complaint [18] pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, the motion is denied.

**I.  Background[1]**

Plaintiff operates a business that constructs, services, supplies, modifies, and repairs low temperature industrial refrigeration systems. Compl. ¶ 9. In 2006, the Milord Company ("Milord") contacted Plaintiff in connection with a bid for a job at Home Run Inn's pizza manufacturing plant. *Id.* ¶ 10. The job involved modifying and installing a refrigeration system

---

[1] For purposes of Defendant's motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, *e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

at the manufacturing plant. *Id*. Plaintiff subcontracted the design of refrigeration control systems to companies who specialize in that work. *Id*. ¶ 11. Plaintiff contacted Hench of Hench Control I to provide a bid for the refrigeration control system because the company claimed to specialize in that work. *Id*.

Hench and Ron Ariano, Hench Control I's manufacturing representative, travelled to Chicago to meet with the maintenance manager at Home Run Inn's processing plant. Compl. ¶ 12. They examined the existing control system to establish the criteria needed to design a control system to meet Home Run Inn's requirements. *Id*. On or about October 11, 2006, Hench submitted a proposal, on behalf of Hench Control I, to Plaintiff with a control system design for Home Run Inn's refrigeration system. *Id*. ¶ 13. Plaintiff submitted its bid to Milord on the Home Run Inn project. *Id*. ¶ 14. The bid included Hench Control I's proposal. *Id*.

On or about October 20, 2006, Plaintiff was advised that it had been awarded the Home Run Inn job. Compl. ¶ 15. Plaintiff and Milord entered into a formal subcontract on November 6, 2006. *Id*. Pursuant to this contract, Plaintiff was to provide a refrigeration control system that operated to Home Run Inn's specifications. *Id*. To that end, Plaintiff issued a purchase order to Hench Control I for the work set forth in their refrigeration control system proposal. *Id*. ¶ 16. The amount of the purchase order was $45,078. *Id*. One of the conditions of the purchase order called for Hench Control I to provide a current certificate of insurance with Plaintiff listed as an additional insured. *Id*. ¶ 17. In addition, the purchase order required Hench Control I to comply with the requirements and be bound to the terms of the contract between Plaintiff and Milord. *Id*.

On or about November 1, 2006, Hench Control I accepted Plaintiff's purchase order and issued an invoice requesting 40% down payment of the purchase price, an amount that totaled

$18,031. Compl. ¶ 18. On the same date, Hench Control I also sent Plaintiff a certificate of insurance naming it as an additional insured as requested. *Id*. ¶ 19. Plaintiff issued Hench Control I a check in the amount of $18,031 on or about December 15, 2006. *Id*. ¶ 20.

On or about January 12, 2007, Hench Control I issued a second invoice requesting 50% of the purchase price, an amount that totaled $22,539. Compl. ¶ 21. During March 2007, without notice to Plaintiff, Hench Control I was acquired by Caesar in an assets sale. *Id*. ¶¶ 22, 27. Hench remained as Chief Technical Officer and Daneman became Chief Executive Officer. *Id*. ¶ 22. Additionally, and also without notice to Plaintiff, the subcontract with Plaintiff was transferred to and was being performed by Hench Control II. *Id*. ¶ 23.

On or before March 30, 2007, a control panel board was delivered to Plaintiff for the Home Run Inn project. Compl. ¶ 24. Plaintiff contacted Spur Electric, Inc., a subcontractor, to attach the control panel board to the refrigeration system at Home Run Inn's plant. *Id*. On that same day, Plaintiff issued Hench Control I a check in the amount of $22,539 – the amount of the second invoice. *Id*. ¶ 25. Also, around the same date, without notice to Plaintiff, Hench Control I allowed its insurance policy (that named Plaintiff as an additional insured) to lapse. *Id*. ¶ 26. Neither Caesar nor Hench Control II provided Plaintiff with a replacement or continuation certificate of insurance. *Id*.

On or about May 16, 2007, without notice to Plaintiff, Hench changed the name of Hench Control I to Hench Consulting, Inc. Compl. ¶¶ 27, 28. In June 2007, Milord notified Plaintiff that the control system did not operate according to Home Run Inn's requirements and that Home Run Inn would not accept the control system, nor would it approve final payment to be made to Milord and Plaintiff. *Id*. ¶ 29. Plaintiff notified Hench Control I about the control system and requested that it take the necessary action under the purchase order to make the

3

control system operate as Home Run Inn required. *Id.* ¶ 30. On or about July 5, 2007, Plaintiff received an invoice from Hench Control II requesting the final payment for the control system. *Id.* ¶ 31.

In July 2007, Hench visited Home Run Inn in Chicago and made an inspection of the control system, but was unable to cure the defects. Compl. ¶ 33. Shortly after this visit, Hench was no longer available to Plaintiff for consultation and Plaintiff believed that Hench was no longer employed by Hench Control II. *Id.* On or about July 9, 2007, without notice to Plaintiff, Hench dissolved Hench Control I. *Id.* ¶ 32.

Between June and December in 2007, the control system failed to operate, which caused daily shut downs of the refrigeration system at Home Run Inn's plant. Compl. ¶ 34. During that time, Plaintiff and Spur, its electrical subcontractor, provided its own personnel to monitor the control system to prevent a shut down and to attempt to determine the cause of the failure. *Id.* Hench Control II also provided telephonic support, onsite inspection, and numerous replacement parts during this time period. *Id.* ¶ 35. Despite all of this effort, the control system did not operate continuously. *Id.*

On or about December 12, 2007, Hench Control II sent an engineer to investigate the control system at Home Run Inn's plant. Compl. ¶ 36. After investigation, the engineer concluded that Plaintiff failed to replace a defective humidi-stat, and that the failure caused the control system malfunction. *Id.* Plaintiff then replaced the humidi-stat and had Spur rewire the control system in accordance with the instructions provided by Hench Control II. *Id.* ¶ 37. However, the control system continued to malfunction even after this part was replaced. *Id.* Plaintiff and Spur continued to make service calls to the Home Run Inn plant to monitor the control system in order to keep the plant in production and avoid discontinuation of production

operations and substantial loss of product. *Id.* ¶ 38. Additionally, Plaintiff continued to demand that Hench Control I and/or Hench Control II correct the malfunction in the control system. *Id.* ¶¶ 38, 40. Neither company cured this malfunction. *Id.* ¶¶ 38, 40.

Hench Control II issued an invoice to Plaintiff in the amount of $52,826.14 for the final balance due and charges for remedial work. Compl. ¶ 39. Additionally, Hench Control II refused to perform any further work on the control system until it was paid in full. *Id.* Between December 2007 and June 2008, Daneman, CEO of Caesar and Hench Control II, sent correspondence to Home Run Inn and Milord stating that Plaintiff's faulty work was the reason for the failure in the control system. *Id.* ¶ 40. Daneman also complained about Plaintiff's failure to pay, despite Hench Control II fully completing its duties under the agreement. *Id.*

On January 10, 2008, Daneman wrote directly to Milord and Home Run Inn stating that the control system was performing as expected, inferring that any failures were due to Plaintiff's faulty work, and disclosing the amount that Plaintiff was in arrears. Compl. ¶ 41. Milord forwarded a copy of this letter to Plaintiff. *Id.* Also, on the same date as Daneman's letter, Milord's project manager responded to the claim that the performance issues were Plaintiff's fault by pointing to Hench Control II's technician's awareness of the defective device and failure to alert anyone to the problem for more than six months. *Id.* ¶ 42.

After receiving a copy of the January 10, 2008 letter that Daneman wrote, Plaintiff began to conduct an investigation into Hench Control I's corporate status. Compl. ¶ 43. During the investigation, Plaintiff discovered that Hench Control I had changed its name and, subsequently, dissolved its corporate entity. *Id.* Further investigation disclosed that Hench Control I had been sold to Caesar and was now being operated by Daneman as Hench Control II. *Id.* Plaintiff had

been dealing with Hench Control II since March 2007, but that company was not incorporated until January 28, 2008. *Id*.

On or about April 2, 2008, Plaintiff issued letters to Hench Control I and Hench Control II demanding that both companies, including successors, beneficiaries, and designees, make the necessary repairs to the control system at Home Run Inn's plant in Chicago, Illinois. Compl. ¶ 44. Neither company responded or complied with Plaintiff's demand. *Id*. ¶ 45. On April 29, 2008, Home Run Inn made demand upon Milord, who made demand upon Plaintiff, to remove the control system by Hench Control I and replace it with a functioning control system. *Id*. ¶ 46.

In May 2008, Plaintiff hired Select Technologies, Inc. to remove the malfunctioning control system and to design and install a new control system for Home Run Inn's plant. Compl. ¶ 47. In August 2008, Select Technologies, Inc. completed this work and, as a result, Plaintiff paid it $123,200 for the work performed. *Id*. ¶ 48. This new control system is operating as specified by Home Run Inn. *Id*.

According to Plaintiff, it has performed all of its obligations pursuant to the agreement between Hench Control I and itself. Compl. ¶ 49. Plaintiff further alleges that Hench Control I and Hench Control II failed to fulfill their obligations under the purchase order by not providing an operational control system as required by Home Run Inn despite having been paid for the work by Plaintiff. *Id*. ¶ 50. Plaintiff also alleges that Hench, as President of Hench Control I, is responsible for the obligations of the company pursuant to his obligations as an officer during dissolution under California Corporation Code. *Id*. ¶ 97. Finally, Plaintiff alleges that to the extent that Hench was a shareholder of Hench Control I and received assets from the sale and dissolution of the company, he is responsible for its obligations. *Id*.

Plaintiff's complaint consists of six counts: (I) breach of contract against Hench Control I; (II) breach of contract against Hench Control II; (III) breach of contract against Caesar; (IV) breach of contract against Daneman; (V) breach of contract against Hench[2]; and (VI) toritous interference with contract against Hench Control II and Daneman. Before the Court is Defendant Hench's motion to dismiss Count V.

## II.  Legal Standard on a Rule 12(b)(6) Motion

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Svcs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the Plaintiff and all reasonable inference that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

## III.  Analysis

Count V against Hench is labeled breach of contract. The specific allegations in the count, however, actually appear to assert claims for violations of Sections 2001 and 2009 of the

---

[2] As discussed below, Count V actually alleges statutory violations against Hench.

California Corporation Code. The dissonance between the label on a count and the allegations set forth within it does not bear on the analysis of Hench's motion to dismiss. See *Transamerica Occidental Life Ins. Co. v. Abelson*, 1990 WL 19866, at *2 (N.D. Ill. Feb. 22, 1990) ("the title given by an attorney to a count of a complaint is surely not dispositive (or maybe even persuasive) of the cause of action actually stated therein"). Therefore, the Court will analyze whether Plaintiff sufficiently stated claims for violation of Sections 2001 and 2009 of the California Corporation Code.

### A. Violation of Cal. Corp. Code § 2001(c)

Section 2001 of the California Corporation Code governs the "powers and duties of the directors * * * and officers after commencement of a dissolution proceeding." One of these duties is to "carry out contracts." Cal. Corp. Code § 2001(c). Plaintiff alleges that Hench dissolved Hench Control I on or about July 9, 2007, and that as President, he failed to fulfill the company's contractual obligations as required by Cal. Corp. Code § 2001(c). Compl. ¶¶ 100, 101. The contractual obligations of Hench Control I were to provide a control system as specified for Home Run Inn's refrigeration unit, and the contract was entered into on October 20, 2006 between Plaintiff and Hench Control I. *Id.* ¶ 101. Plaintiff further alleges that it made demand for Hench Control I to cure the control system's defects beginning in June 2007. *Id.* ¶ 102. Additionally, Plaintiff alleges that Hench traveled to the Home Run Inn plant to make an inspection of the control system and was unable to resolve the defects. *Id.* ¶ 33. No cure of the defect was made prior to Hench Control I's dissolution. *Id.* ¶¶ 34, 103.

Defendant argues that Plaintiff has misinterpreted the statute to mean that Defendant has personal responsibility for Hench Control I's contractual obligations. But that does not appear to be the basis of Plaintiff's claim. Rather, Plaintiff alleges that Hench did not discharge his duty

under Section 2001(c), as President of the corporation, to carry out the contracts of Hench Control I prior to its dissolution. Defendant also argues that in order to state a claim under Section 2001, Plaintiff first must allege that Defendant improperly distributed assets during the dissolution. However, Section 2001(c) does not contain, and Defendant cites no authority recognizing, any such requirement. Because Defendant has notice of the nature and the grounds of the allegations made against him, Plaintiff has sufficiently alleged facts to state a claim under Fed. R. Civ. P. 8 and Section 2001(c) of the California Corporation Code. Accordingly, Defendant's motion to dismiss that claim is denied.[3]

B. Violation of Cal. Corp. Code § 2009(a)

Section 2009 of the California Corporation Code governs the recovery of improperly distributed assets made during dissolution of a company. To prove its case, Plaintiff ultimately must show that (1) the corporation was in the "process of winding up," and (2) a distribution of assets was made "without prior payment or adequate provision for payment of any of the debts and liabilities of the corporation." Cal. Corp. Code § 2009(a). The provision provides that "any amount so improperly distributed to any shareholder may be recovered by the corporation" and "[a]ny of such shareholders may be joined as defendants in the same action." *Id*.

Defendant argues that Plaintiff does not allege any actual facts that show a violation of Section 2009. Plaintiff does allege that Hench Control Corporation was dissolved on or about July 9, 2007, which satisfies the first element of Section 2009. Compl. ¶ 100. However,

---

[3] Hench also argues that another chapter of the Code limits the liability of directors. Hench has not explained, however, why that provision would apply here given that Plaintiff is alleging that Hench is liable based on his status as a shareholder rather than as a director. And as Plaintiff correctly points out, Section 2011 of the Code specifically states that "[c]auses of action against a dissolved corporation, whether arising before or after the dissolution of the corporation, may be enforced against * * * shareholders of the dissolved corporation" if "any of the assets of the dissolved corporation have been distributed to shareholders." Cal. Corp. Code. § 2011(a)(1)(B).

9

Plaintiff does not provide any detailed facts regarding the second element. Instead, Plaintiff alleges:

> [T]o the extent that Hench, as a shareholder of Hench Control I, received assets and/or any distributions from the dissolution of Hench Control I without having fulfilled the liabilities of Hench Control I prior to dissolution, Hench is required to disgorge any distributions and/or funds received from Hench Control I during dissolution.

*Id.* ¶ 108. Plaintiff additionally gives the elements of Section 2009 in its complaint. *Id.* ¶ 99.

Plaintiff does not need "detailed factual allegations" in its complaint; rather, its complaint needs "enough factual matter (taken as true) to suggest" that a violation of Section 2009 has occurred. *Twombly*, 550 U.S. at 555-56. The only scarcity of facts in Plaintiff's complaint concerns whether Hench the individual received money during the dissolution of Hench Control I. However, Plaintiff is not obligated to plead specific facts when those facts are "peculiarly within the defendant's knowledge and control." *United States ex rel. Robinson v. Northrop Corp.*, 149 F.R.D. 142, 145-46 (N.D. Ill. 1993).[4] Plaintiff provided extensive factual detail in support of its suspicions that something amiss occurred when Hench sold Hench Control I's assets to Caesar and then dissolved Hench Control I. After the sale, Hench remained with the new company in the position of Chief Technical Officer. Those allegations plausibly suggest that Hench may have received assets and/or distributions from the dissolution of Hench Control

---

[4] Even under the heightened pleading standards imposed for averments of fraud under Rule 9(b) courts have allowed plaintiffs leeway in regard to the detail in their allegations where "the necessary information [is] peculiarly within the defendant's control." *Northrop Corp.*, 149 F.R.D. at 146 (stating the rule with respect to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)); see also *United States v. Longmire*, 761 F.2d 411, 417 (7th Cir. 1985).

I.[5]  Additionally, Plaintiff alleged facts throughout the complaint relating to Hench's failure to fulfill the responsibilities of Hench Control I prior to dissolution.

In sum, the complaint provides Defendant with sufficient notice of Plaintiff's claim alleging a violation of Section 2009 of the California Corporation Code and the grounds upon which that claim rests.  Defendant's motion to dismiss therefore is denied as to Plaintiff's Section 2009 claim.

Finally, the Court notes that Defendant raises objections to the amount of damages alleged by Plaintiff.  Damages questions typically are quintessential fact questions.  See, *e.g.*, *First Nat'l Bank of Chicago v. Material Svc. Corp.*, 597 F.2d 1110, 1119 (7th Cir. 1979).  Although Defendant's interpretation of the statute may indeed cap damages at an amount far less than that which Plaintiff requests, the Court need not decide the issue at this time.  Given the close fit between the facts underlying the claim against Hench and the facts underlying the claims against the other defendants, the Court would retain supplemental jurisdiction over the claim against Hench regardless of how low damages against Hench may go.  *Exxon Mobil Corp. v. Allapattah Svcs., Inc.*, 545 U.S. 546, 549, 566-67 (2005); 28 U.S.C. § 1367.

---

[5] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## V. Conclusion

For the reasons stated above, Defendant's motion to dismiss Count V of the complaint [18] is denied.

Dated: September 28, 2009

_____
Robert M. Dow, Jr.
United States District Judge