# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DUAL-TEMP OF ILLINOIS, INC., an Illinois corporation, | Case No. 09-cv-595 |
| Plaintiff, | Judge Sharon Johnson Coleman |
| v. | Magistrate Judge Nan R. Nolan |
| HENCH CONTROL CORPORATION, a California corporation; HENCH CONTROL, INC., a California corporation; CAESAR-VERONA, INC., a Washington corporation; and JOHN HENCH, an individual, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Dual-Temp of Illinois, Inc.'s ("Dual-Temp") motion for leave to file an amended complaint to add seven new claims and to rename as a defendant an individual that this Court previously dismissed. Defendants John Hench ("Hench") and Hench Consulting, Inc. ("Hench I") filed their opposition arguing, *inter alia*, that Dual-Temp's proposed negligence claims are barred by operation of the economic loss rule and that its proposed fraud claim fails to meet the particularity requirement under Fed. R. Civ. P. 9(b). Separately, Defendants Caesar-Verona, Inc. ("Caesar"), Hench Control, Inc. ("Hench II"), and Alex Daneman ("Daneman") opposed the motion on similar grounds and further argued that the Court lacks personal jurisdiction over Daneman. For the reasons that follow, the Court grants Dual-Temp's motion in part and denies it in part.

**BACKGROUND**

The following relevant facts are undisputed, unless specified otherwise. Dual-Temp builds, modifies, and repairs low temperature industrial refrigeration systems. (Dkt. No. 1 ¶ 9.) In 2006, the Milford Company ("Milford"), a general contractor, asked Dual-Temp to provide a bid for the modification and installation of a refrigeration system for the pizza manufacturing plant of Home Run Inn ("Home Run"). (*Id.* at ¶ 10.) The refrigeration project was to include an improved refrigeration control system to replace Home Run's existing refrigeration control system. (*Id.*) The new control system was to automatically control the refrigeration equipment and sound alarms when equipment malfunctioned or rose above safe levels. (*Id.*) Since Dual-Temp does not design refrigeration control systems, it contacted Hench, President of Hench I, to provide a bid to act as a subcontractor for Dual-Temp on the Home Run project. (*Id*. at ¶¶ 7, 11.) Hench I was a supplier of energy management control systems for industrial refrigeration. (*Id*.)

Prior to preparing a proposal for Dual-Temp, Hench and Ron Ariano ("Ariano"), Hench I's manufacturing representative, met with the maintenance manager at Home Run's processing plant to examine the existing system and to discuss the criteria for the new control system. (*Id.* at ¶ 12.) On October 11, 2006, Hench submitted a proposal on behalf of Hench I setting forth a design for the new refrigeration control system. (*Id.* at ¶ 13.) After receiving Hench I's proposal, Dual-Temp included the proposal in the bid that it submitted to Milford. (*Id.* at ¶ 14.) On October 20, 2006 Milford awarded Dual-Temp the subcontract to furnish all of the work related to the modification and installation of the Home Run refrigeration project. (*Id.* at ¶ 15.)

After being awarded the subcontract, Dual-Temp issued a purchase order to Hench I in the amount of $45,078.00 for the work set forth in Hench I's proposal. (*Id.* at ¶ 16.) The terms

of the purchase order required Hench I to provide a current certificate of insurance listing Dual-Temp as an additional insured. (*Id.* at ¶ 17.) The terms also required that the materials and equipment furnished by Hench I be in compliance with the requirements of the contract between Dual-Temp and Milford. (*Id.*) In November 2006, Hench I accepted the purchase order by issuing an invoice requesting 40% of the purchase price as a down payment and by submitting a certificate of insurance naming Dual-Temp as an additional insured under Hench I's insurance policy. (*Id.* at ¶¶ 18-19.) In December 2006, Dual-Temp issued Hench I a check in the amount specified in Hench I's invoice. Hench I issued Dual-Temp a second invoice in January 2007 requesting 50% of the purchase price pursuant to its proposal of October 11, 2006. (*Id*. at ¶ 21.) On March 30, 2007, Dual-Temp received a control panel board for the Home Run project and issued Hench I a check for the amount set forth in the second invoice that same day. (*Id.* at ¶¶ 24-25.)

Unbeknownst to Dual-Temp, the business of Hench I was acquired by Caesar in March 2007. (*Id.* at ¶ 22.) Dual-Temp was not informed that its subcontract with Hench I was now being performed by Hench II. (*Id.* at ¶ 23.) In late March 2007, Hench I allowed its certificate of insurance in which Dual-Temp was named as an additional insured to lapse without written notice to Dual-Temp as required by the purchase order terms. (*Id.* at ¶ 26.) Neither Caesar nor Hench II provided Dual-Temp with a replacement or continuation certificate of insurance. (*Id.*) In May 2007, Hench changed the name of the company from Hench Control Corporation to Hench Consulting, Inc. (*Id.* at ¶ 27.) Dual-Temp was not informed of the name change. (*Id.*)

In June 2007, Milford notified Dual-Temp that Home Run refused to accept the refrigeration control system and would not approve final payment because the refrigeration control system was not operating according to Home Run's requirements. (*Id.* at 29.) Dual-

Temp informed Hench I of the problem and requested the company take the steps necessary to make the control system operate as required. (*Id.* at ¶ 30.) On July 5, 2007, Dual-Temp received an invoice from Hench II requesting the final 10% payment for the control system. Dual-Temp was unaware that Hench I was dissolved as a corporation on or about July 9, 2007. (*Id.* at ¶ 32.)

In July 2007, Hench conducted an on-site inspection of the Home Run refrigeration control system but was unable to resolve the defects found in the system. (*Id.* at ¶ 33.) Between June 2007 and December 2007, the refrigeration control system failed to operate and caused daily shut downs of the refrigeration system. (*Id.* at ¶ 34.) During this same time frame, Hench II provided telephone support, an on site inspection, and numerous replacement parts but could not make the refrigeration control system operate properly. (*Id.* at ¶ 35.) Dual-Temp was forced to provide personnel to physically monitor the refrigeration system to prevent a catastrophic shut down and to attempt to determine the cause of the malfunctions. (*Id.*) Although the control system did not properly operate, Hench II issued Dual-Temp an invoice for the final 10% balance due plus additional charges for remedial work. (*Id.* at ¶ 39.)

In January 2008, Dual-Temp conducted an investigation of Hench I's corporate status and learned that the company had changed its name and subsequently dissolved. (*Id.* at ¶ 43.) Dual-Temp also discovered that Hench II was not incorporated until January 28, 2008. (*Id.*) Armed with this knowledge, Dual-Temp issued letters to Hench I and Hench II demanding they make the necessary repairs to the refrigeration control system. (*Id.* at ¶ 44.) Hench I and Hench II failed to make the necessary repairs and in April 2008, Home Run demanded Milford remove the Hench I control system and replace it with a functioning refrigeration control system. (*Id.* at ¶¶ 45-46.) In May 2008, Dual-Temp hired Select Technologies, Inc. ("Select") to remove the Hench I control system and to design and install a new refrigeration control system to be

operated at Home Run's plant. (*Id*. at ¶ 47.) Select completed the removal and installation in August 2008 and was paid $123,300.00 by Dual-Temp for the work performed. (*Id.* at ¶ 48.) The new refrigeration control system installed by Select is operating in accordance with Home Run's specifications. (*Id.*)

On January 30, 2009, Dual-Temp filed a six-count complaint asserting: (1) breach of contract against Hench I; (2) breach of contract against Hench II; (3) breach of contract against Caesar in the alternative to count II; (4) breach of contract against Daneman in the alternative to count III; (5) breach of contract against Hench; and (6) tortious interference with contract against Hench II and Daneman. (Dkt. No. 1.) On May 22, 2009, Daneman filed a motion to dismiss alleging the Court lacked personal jurisdiction over him and that the claim against him was barred by the fiduciary shield doctrine. (Dkt. No. 49.) The Court allowed the parties to engage in discovery related to the jurisdictional allegations raised by Daneman and the other defendants. (Dkt. No. 65.) On December 4, 2009, the Court found it lacked personal jurisdiction over Daneman and granted his motion to dismiss. (Dkt. No. 81.) Prior to the Court's ruling, Dual-Temp voluntarily dismissed the tortious interference with contract claim. (Dkt. No. 74.)

Discovery in this action commenced on January 15, 2010 on the remaining breach of contract claims and the claim for violations of the California Corporation Code.[1] On August 9, 2010, the parties jointly moved to stay the completion of discovery until 120 days after the parties engaged in mediation. (Dkt. No. 104.) On October 21, 2010, the parties participated in a settlement conference before the Magistrate Judge but were unable to reach agreement. (Dkt. No. 125.) Shortly thereafter on November 12, 2010, the Court ordered the parties to complete oral discovery by May 31, 2011. (Dkt. No. 127.)

---

1 Although count V against Hench is labeled breach of contract, the Court found that the allegations assert claims for violations of Sections 2001 and 2009 of the California Corporation Code. (Dkt. No. 78 pp. 7-8.)

On January 4, 2011, Dual-Temp filed the instant motion seeking leave to file an amended complaint to rename Daneman as a defendant and to assert seven additional claims. (Dkt. No. 130.) Dual-Temp alleges that it has learned facts through discovery that give rise to additional theories of liability. (*Id.* at ¶ 1.) In the proposed amended complaint, Dual-Temp asserts eleven claims as follows: (1) negligence against Hench and Hench I; (2) breach of contract against Hench I; (3) breach of contract against Hench II; (4) breach of contract against Caesar in the alternative to count III; (5) breach of contract against Daneman in the alternative to count IV; (6) breach of contract against Hench; (8)[2] fraudulent misrepresentation against Hench and Hench I; (9) negligent misrepresentation against Hench and Hench I in the alternative to count VIII; (10) negligent misrepresentation against Daneman, Hench II, and Caesar; (11) fraudulent misrepresentation against Daneman, Hench II, and Caesar; and (12) breach of the implied warranty of fitness for a particular purpose against Hench and Hench I.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 15(a) instructs that leave to amend shall be freely given "when justice so requires." *Sound of Music v. Minn. Mining and Mfg. Co.*, 477 F.3d 910, 922 (7th Cir. 2007); FED. R. CIV. P. 15(a). Although leave to amend should be freely given, "that does not mean it must always be given." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009) (denying leave where proposed complaint contained new allegations which would require additional discovery for the defendant to rebut). A district court has the discretion to deny a motion for leave to amend if there is undue delay, bad faith, dilatory motive, undue prejudice to the opposing party by virtue of allowing the amendment, or futility of amendment. *Sound of Music*, 477 F.3d at 922. A proposed amendment is considered futile if it will not survive a motion to dismiss. *Crestview Vill. Apts. v. U.S. HUD*, 383 F.3d 552, 558 (7th Cir.

---

2 Dual-Temp did not assert a count VII in the proposed amended complaint. (Dkt. No. 130-1 pp. 27-30.)

2004). A district may also deny a motion for leave to amend where the reason given for the amendment does not justify granting leave. *Hukic*, 588 F.3d at 432.

## DISCUSSION

**1.      Proposed Claims Against Hench and Hench I**

The proposed complaint asserts three new claims against Hench and Hench I (collectively "Hench I Defendants") sounding in tort: negligence, fraudulent misrepresentation, and negligent misrepresentation. Dual-Temp also seeks to assert a claim for breach of the implied warranty of fitness for a particular purpose against these defendants. In opposition, the Hench I Defendants argue, *inter alia*, that the amendments relating to the tort claims are futile because these claims are barred by operation of the economic loss rule. The Hench I Defendants further argue that Dual-Temp's motion to amend should be denied for reasons of undue delay and prejudice. Dual-Temp counters that its tort claims fall outside of the economic loss rule or fit within one of its exceptions as set forth in *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69 (Ill. 1982). Dual-Temp also contends that it has not unduly delayed seeking the amendment.

    **A.      Economic Loss Rule**

The economic loss doctrine denies a remedy in tort for product defects when the plaintiff's loss is rooted in disappointed contractual or commercial expectations. *Id.* at 88; *Am. United Logistics, Inc. v. Central Am. Warehousing Co., Inc.*, 319 F.3d 921, 926 (7th Cir. 2003). *Moorman* held that contract law provides the proper remedy for disappointed commercial expectations, such as when a product is unfit for its intended use. *Moorman*, 91 Ill.2d at 85-86. There are three exceptions to the *Moorman* economic loss rule where: (1) the plaintiff's damages are proximately caused by a defendant's intentional or false representation; (2) the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in

the business of supplying information for the guidance of others in their business transactions; and (3) a sudden and calamitous occurrence causes personal injury or other property damage. *Trans State Airlines v. Pratt & Whitney Can., Inc.*, 177 Ill.2d 21, 26-27 & 31 (Ill. 1997).

### B. "Other Property" Exception

In its reply brief, Dual-Temp argues that its tort claims are not barred by the economic loss rule because Dual-Temp claimed damage to "other property" rather than to any "bargained for" item. (Dkt. No. 144 pp. 6-8.) Dual-Temp argues that it bargained with the Hench I Defendants for a refrigeration control system and thus any damage to the refrigeration system is damage to "other property" outside of the bargained for agreement. (*Id.*) There are two flaws in this argument. First, the proposed complaint does not allege or seek relief for any damage to the refrigeration system. Second, and more importantly, the Illinois Supreme Court has emphasized that recovery for damage to "other property" is only available where that damage is coupled with a sudden and calamitous occurrence. *Trans State*, 177 Ill.2d at 41. In an attempt to fit within the "other property" exception, Dual-Temp alleges in the proposed complaint that it had to provide its own personnel "to physically monitor the refrigeration control system continuously to keep it in safe and continuous operation and to prevent possible sudden and calamitous damage." (Dkt. No. 130-1 ¶ 37.) A possible sudden and calamitous occurrence is insufficient to satisfy the "other property" exception. The Court finds that the "other property" exception to the *Moorman* doctrine does not apply to Dual-Temp's tort claims.

### C. Negligence Claim

Dual-Temp argues that its negligence claim is not precluded by the economic loss rule. (Dkt. No. 144 pp. 6-8.) *Moorman* specifically denies negligence claims unless the plaintiff can show harm above and beyond a party's contractual or commercial expectations. *In re Chicago*

*Flood Litigation*, 176 Ill.2d 179 (Ill. 1997). In its proposed negligence claim, Dual-Temp asserts that it suffered damages of $486,625.96 because the Hench I Defendants were negligent in providing a safe and functional refrigeration control system. (Dkt. No. 130-1 pp. 14-18.) The damages included $212,175.24 in costs incurred by Dual-Temp in monitoring the malfunctioning control system, $150,150.72 Dual-Temp paid to its electrical subcontractor to assist with the monitoring effort, and $123,000 Dual-Temp paid Select to provide a functional refrigeration control system. (*Id.* at ¶¶ 70-72.) Yet Dual-Temp specifically bargained for a functional refrigeration control system and for protection in the event that the control system did not meet specifications. The purchase order that became the bargain between Dual-Temp and Hench I provided in relevant part:

> Seller shall guarantee work covered under this purchase order to produce capacities to meet design specifications and function (1) as called for in the plans, specification, or addenda…In the event of Seller's default hereunder, Seller shall pay all special, incidental or consequential damages incurred by Purchaser. (Dkt. No. 1-4 p. 2.)

Dual-Temp bargained for the very damages it now attempts to seek in its negligence claim and thus in accordance with *Moorman*, Dual-Temp is limited to recovering these damages under contract law.

### D. Fraudulent Misrepresentation Claim

Although Dual-Temp correctly notes that its fraudulent misrepresentation claim falls within a *Moorman* exception, the claim fails to meet the particularity requirement for pleading fraud under Fed. R. Civ. P. 9(b). The heightened pleading standard set forth in Rule 9(b) requires that in all allegations of fraud, "a party must state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). This means a party must plead "the who, what, when where, and how: the first paragraph of any newspaper story." *U.S. ex rel. Lusby v. Rolls-Royce*

*Corp.*, 570 F.3d 849, 853 (7th Cir. 2009). The Seventh Circuit has ruled that a plaintiff cannot generally satisfy the particularity requirement of Rule 9(b) with a complaint that is filed on information and belief. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011).

The parties agree that Illinois law applies to Dual-Temp's proposed fraudulent misrepresentation claim. (Dkt. No. 138 ¶ 10; Dkt. No. 144 p. 11.) To state a claim for fraudulent misrepresentation under Illinois law, a plaintiff must allege: (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance. *Doe v. Dilling*, 228 Ill.2d 324, 343 (Ill. 2008).

The proposed complaint appears to allege that the Hench I Defendants made false representations concerning the extent of Ariano's knowledge of refrigeration control systems. (Dkt. No. 130-1 ¶¶ 16, 136.) Dual-Temp argues that it met the particularity requirements of 9(b) by clearly identifying the individuals who made fraudulent statements and providing supporting documentary exhibits. (Dkt. No. 144 p. 9.) Yet the proposed complaint does neither. There is no allegation identifying a specific false statement made by anyone concerning Ariano's expertise. The exhibit Dual-Temp relies upon shows only that Ariano acknowledged that he was not an expert and thus he relied upon Hench to prepare a quote. (Dkt. No. 130-2.) Without an accompanying allegation asserting that the Hench I Defendants represented Ariano as being an expert, this document does not suggest a false statement, let alone a materially false one. At best, the proposed complaint alleges only that "upon information and belief" the Hench I Defendants "knew, or should have known, that ARIANO did not have enough experience with

Hench control systems to provide sufficient data for adapting the Hench system to control the type of system used at HOME RUN." (*Id.* at ¶ 136.) Not only does this allegation fail to meet the particularity requirement but it implies negligence rather than fraud, and as previously discussed, Dual-Temp's negligent claim is barred under *Moorman*. Dual-Temp's fraudulent misrepresentation claim cannot survive a motion to dismiss and thus an amendment to include this claim would be futile.

### E. Negligent Misrepresentation Claim

Dual-Temp's negligent misrepresentation claim is also barred by *Moorman*. While a claim for negligent misrepresentation is a recognized exception under *Moorman*, the exception applies only where the defendant is in the business of supplying information for the guidance of others. According to the Complaint, the Hench I Defendants consist of Hench I, "a supplier of energy management control systems for industrial refrigeration" (Dkt. No. 1 ¶ 11), and Hench, the president and founder of Hench I (*Id.* at ¶ 7). Dual-Temp fails to allege that the Hench I Defendants are information providers in either the Complaint or in its reply brief. Such an allegation would not salvage Dual-Temp's negligent misrepresentation claim because in determining whether the exception applies, courts look to the ultimate results of the defendant's work. *Fireman's Fund Ins. Co. v. SEC Donohue, Inc.*, 176 Ill.2d 160, 169 (Ill. 1997). Where the ultimate result is a tangible product, the negligent misrepresentation exception does not apply. *Id.* Here, Dual-Temp has alleged that the Hench I Defendants proposed to act as a subcontractor to supply a tangible product, *i.e.*, a refrigeration control system. Any information supplied by the Hench I Defendants was merely provided in connection with the delivery and installation of the control system. The Court finds that *Moorman*'s negligent misrepresentation exception does not apply to the facts in this case.

### F. Breach of the Implied Warranty of Fitness for a Particular Purpose Claim

The Hench I Defendants make no specific argument against the proposed claim for breach of the implied warranty of fitness for a particular purpose. Rather, they generally argue that since the proposed amended comes nearly two years after this action was filed that they would suffer undue prejudice because of the need to re-open discovery. (Dkt. No. 138 pp. 10-11.) This argument lacks merit as much of the discovery relating to the breach of contract claim is relevant to the implied warranty claim. Furthermore, Dual-Temp argues in its opening brief that "no additional discovery will be required as a result of amending the Complaint." (Dkt. No. 130 ¶ 3.) The Court will hold Dual-Temp to its assertion that all discovery related to the implied warranty claim can be completed within the discovery schedule set forth by this Court. The Court will allow Dual-Temp to amend its Complaint to add the implied warranty claim.

### 2. Proposed Claims Against Daneman, Hench II, and Caesar

The proposed complaint seeks to rename Daneman as a defendant and assert claims for negligent and fraudulent misrepresentation against Daneman, Hench II, and Caesar (collectively "Hench II Defendants"). The Hench II Defendants argue that the Court has already determined that it lacks personal jurisdiction over Daneman and that the exercise of personal jurisdiction over him is barred from by the law-of-the-case doctrine. (Dkt. No. 139 p. 1.) These defendants further argue that the negligent misrepresentation claim is barred by the economic loss rule and that the fraudulent misrepresentation claim fails to meet the particularity requirement under Rule 9(b).

### A. Personal Jurisdiction Over Daneman

The Hench II Defendants argue that Dual-Temp has failed to provide the Court with a valid basis to reconsider its ruling that it lacks personal jurisdiction over Daneman. (*Id*. at pp. 5-

8.) Under the law-of-the-case doctrine, a district court may revisit a prior ruling in the same litigation if there is a compelling reason that makes clear that the earlier ruling was erroneous. *Santamarina v. Sears*, 466 F.3d 570, 572 (7th Cir. 2006). Dual-Temp has failed to provide a compelling reason here. Dual-Temp claims that it did not receive the documents that support the exercise of personal jurisdiction over Daneman until after the Court's ruling on Daneman's motion to dismiss. (Dkt. No. 144 p. 13.) This claim is contradicted by defense counsel's affidavit stating that the documents were produced on or about July 9, 2009 well before this Court's December 4, 2009. (Dkt. No. 139-1.) In its reply, Dual-Temp failed to offer an affidavit or any other evidence to refute this statement. Consequently, this Court lacks a compelling reason to disturb the earlier ruling that the Court lacks personal jurisdiction over Daneman.

      **B.     Negligent Misrepresentation Claim**

The Court finds that Dual-Temp's negligent misrepresentation claim against the Hench II Defendants is barred by the *Moorman* doctrine. As discussed above, the negligent misrepresentation exception applies only where the defendant is an information provider. The Hench II Defendants provided, or attempted to provide, a tangible product and thus they were not engaged in the business of providing information for Dual-Temp's guidance. The Court denies Dual-Temp's request for leave to amend to add this negligent misrepresentation claim.

      **C.     Fraudulent Misrepresentation Claim**

The Hench II Defendants contend that the proposed fraudulent misrepresentation claim against them fails to meet the particularity requirement under Fed. R. Civ. P. 9(b). (Dkt. No. 139 pp. 9-14.) In the proposed complaint, Dual-Temp alleges that the Hench II Defendants knowingly misled Dual-Temp through the use of letterhead and company names that were "confusingly similar" to those used by Hench I. (Dkt. No. 130-1 ¶¶ 166-67, 169.) Dual-Temp

relies upon an unpublished decision to support its argument that providing an incorrect name can amount to fraud. (Dkt. No. 144.) The proposed complaint, however, alleges only that these defendants used a "deceptively similar" name and not a false one. (*Id.* at ¶ 169.) Dual-Temp also alleges that these defendants provided assurances of a perfect record and that the defects in the control system could be cured. (*Id.* at ¶ 170.) Dual-Temp does not allege that these assurances were knowingly false or that these defendants made a knowingly false statement of any kind. (*Id.* at ¶¶ 166-171.) These assurances were statements of opinion relating to future events, which do not constitute an actionable misrepresentation under Illinois law. *See, e.g., Chatham Surgicore, Ltd. v. Health Care Serv., Corp.*, 356 Ill. App. 3d 795, 805 (Ill. App. Ct. 2005). Moreover, Dual-Temp alleges in the fraudulent misrepresentation count that "[b]y reason of Daneman's and HENCH CONTROL II's negligent misrepresentation as to the cause of the system failure…Dual-Temp has been damaged in the amount of $485,625.96." (*Id.* at ¶ 171.) Once again, Dual-Temp's allegation suggests conduct that is negligent rather than fraudulent and liability for negligence is foreclosed by *Moorman*. The proposed fraudulent misrepresentation claim lacks the requisite specificity required by Rule 9(b). As a result, an amendment to add this claim is futile.

## **CONCLUSION**

For the foregoing reasons, the Court grants Dual-Temp's motion for leave to amend its complaint to add a claim for breach of the implied warranty of fitness for a particular purpose against Hench and Hench I. Dual-Temp's motion is denied as to all other amendments.

IT IS SO ORDERED.

_____     _____
Dated: May 2, 2011                  Honorable Sharon Johnson Coleman
                                    United States District Court