UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DUAL-TEMP OF ILLINOIS, INC., an Illinois Corporation<br>Plaintiff,<br><br>v.<br><br>HENCH CONTROL CORPORATION, a California Corporation,<br>HENCH CONTROL, INC., a California Corporation, CAESAR-VERONA, INC., a Washington Corporation,<br>and JOHN HENCH, an Individual,<br>Defendants. | 09-cv-595<br><br>Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Dual-Temp of Illinois, Inc. ("Dual-Temp") alleges breach of contract against Hench Consulting, Inc. f/k/a Hench Control Corporation ("Hench Corporation"), Hench Control, Inc. ("Hench Inc."), Caesar-Verona, Inc. ("Caesar") and John Hench ("Hench"). Dual-Temp also alleges breach of implied warranty of fitness against Hench and Hench Corporation. All parties move for summary judgment. For the foregoing reasons, Hench's motion for summary judgment is granted in its entirety. Hench Corporation's motion to dismiss Dual-Temp's implied warranty of fitness claim is granted. All remaining motions for summary judgment are denied.

**Background**

Dual-Temp is a corporation that installs and services low temperature refrigeration systems. (Dkt. 192 at ¶ 3). Dual-Temp also subcontracts refrigeration design work out to other companies. (Dkt. 192 at ¶ 68). In 2006, Milord Company ("Milord"), a general contractor, contacted Dual-Temp to provide a bid for the modification and installation of a refrigeration system in Home Run Inn's ("Home Run") pizza manufacturing plant. (Dkt. 192 at ¶ 19; Hench and Hench Corporation MSJ at 2). After being contacted by Milord, Dual-Temp contacted Hench Corporation and Hench, the president of Hench Corporation, to provide a bid to act as a subcontractor for the design and replacement of Home Run's refrigeration system. (Dkt. 191 at 2; Dkt. 185 at 2). After Dual-Temp was awarded the bid by Milord, Hench Corporation and

Dual-Temp eventually entered into a contract whereby Hench Corporation was to design and improve Home Run's refrigeration system. (Dkt. 192 at ¶ 20; Dkt. 185 at 2).

During Dual-Temp and Hench Corporation's business relationship, Hench Corporation was acquired by Caesar and renamed Hench Control, Inc. (Dkt. 185 at 3). After receiving the refrigeration system designed by Hench Corporation, Dual-Temp's electrical subcontractor, Spur Electrical, attached a control panel to the refrigeration system and Dual-Temp installed the refrigeration system into the Home Run manufacturing plant. (Dkt. 192 at ¶ 31). Soon after its installation, the refrigeration system began to malfunction and did not operate or communicate properly with Home Run's preexisting systems. (Dkt. 192 at ¶ 49; Dkt. 186 at ¶ 13).

The parties dispute whether the refrigeration system provided by Hench Corporation met the specifications required by Home Run and the parties' contract. Dual-Temp alleges that it contacted the defendants several times to have the problems rectified to no avail. (Dkt. 191 at 3). Dual-Temp claims that the problems with the defendants' refrigeration system caused it to incur losses amounting to $485,625.96. (Compl. at 22). Over $300,000 of Dual-Temp's alleged damages are claimed to have resulted from daily monitoring and troubleshooting to ensure that the refrigeration system did not shut down the Home Run plant entirely. (Dkt. 191 at 16). Dual-Temp alleges that the remaining losses were due to the eventual replacement of the entire system by another design company. (Dkt. 191 at 16). Dual-Temp brings suit against Hench, Hench Corporation, Caesar, and Hench Inc. for breach of contract and implied warranty.

On March 16, 2012, all parties filed motions for summary judgment. Dual-Temp moves for summary judgment on all counts of its complaint. Defendants Hench and Hench Corporation jointly move for summary judgment on Counts I, IV, and V. Defendants Caesar and Hench Inc. jointly move for summary judgment on Counts II and III. For the following reasons, individual defendant Hench's motion for summary judgment as to Counts IV and V is granted. Hench Corporation's motion to dismiss Count V is granted. All other motions and cross motions for summary judgment as to all remaining counts are denied.

**Legal Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The burden is upon the moving party to demonstrate that no genuine issue respecting any material

fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In determining whether a genuine issue of material fact exists, all ambiguities must be resolved and all inferences drawn in favor of the nonmoving party. *Abdullahi v. City of Madison*, 423, F.3d 763, 773 (7th Cir. 2005).

**Discussion**

    *A. Counts I, IV, & V: Dual-Temp v. Hench & Hench Corporation*

Dual-Temp moves for summary judgment on Counts I, IV, and V. Count I alleges breach of contract against Hench Corporation. Count IV alleges breach of contract against Hench individually and Count V alleges breach of implied warranty of fitness against both Hench and Hench Corporation. Hench and Hench Corporation jointly filed a cross motion for summary judgment on Counts I, IV, and V. Dual-Temp's motion for summary judgment is denied in its entirety. Hench's motion for summary judgment as to Counts IV and V is granted. Hench Corporation's motion for summary judgment as to Count I is denied. Hench Corporation's motion for summary judgment as to Count V is granted.

    *1. Count I: Breach of Contract Against Hench Corporation*

The parties do not dispute that Illinois law applies to Dual-Temp's breach of contract claim. Under Illinois law, to prevail on its breach of contract claim Dual-Temp must demonstrate: "(1) the existence of a valid and enforceable contract; (2) substantial performance on its part; (3) a breach by [defendants]; and (4) resultant damages." *United States ex rel. Pileco, Inc. v. Slurry Sys.*, No. 09 C 7459, 2012 U.S. Dist. LEXIS 16309, at *14-15 (N.D. Ill. Feb. 8, 2012). Hench Corporation and Dual-Temp do not dispute the existence of a valid contract between them. However, the parties dispute whether Hench Corporation breached that contract and whether the alleged damages are reasonable or barred by the terms of the purchase order.[1]

Dual-Temp argues that Hench Corporation breached the contract by failing to provide a refrigeration control system as specified. (Dkt. 191 at 7). Hench Corporation responds that a genuine issue of fact exists concerning whether the communication errors were the result of a defect in the Hench Corporation system or some external factor such as the wiring job performed by Spur Electrical. (Dkt. 205 at 2). Both parties cite to evidence supporting their respective contentions. For example, Dual-Temp cites to the fact that Hench Corporation provided a

---

[1] With regards to damages, Hench Control I also argues that: (1) the contract bars Dual-Temp's claim for damages and (2) Dual-Temp failed to establish the source of over $300,000 in damages. However, this Court need not address the damages issue with any specificity at this point having found that there is a genuine issue of material fact as to whether Hench Control I breached the parties' contract.

refrigeration system that contained improper "class software" as evidence that Hench Corporation supplied an improper, malfunctioning refrigeration system. (Dkt. 192 at ¶ 35). Hench Corporation argues that Dual-Temp conceded that there is an issue of fact regarding breach when it stated in interrogatories that Dual-Temp "does not have the expertise to identify the specific cause of the malfunctions." (Dkt. 185 at 1-2).

When "undisputed facts give rise to disputed inferences," summary judgment is inappropriate. *Harley-Davidson Motor Co., Inc. v. Powersports, Inc.*, 319 F.3d 973, 989 (7th Cir. 2003) (ruling that "the choice between reasonable inferences from facts is a function of the fact-finder"); *see also O'Connor v. Chicago Transit Auth.*, 985 F.2d 1362, 1366 (7th Cir. 1993) (noting that "if the evidence presented by the parties is subject to conflicting interpretations, or if reasonable minds could differ as to its significance, summary judgment must not be granted."). Here, there is a genuine factual dispute about whether the control system's malfunctioning and loss of communication issues were due to a defect in the control system designed by Hench Corporation, wiring work performed by Spur Electrical, a defective humidistat installed by Dual-Temp, or some other cause. Accordingly, summary judgment on Count I for breach of contract is inappropriate and both Dual-Temp and Hench Corporation's motions are denied.

  2. *Count IV: Breach of Contract Against John Hench*

Dual-Temp argues that summary judgment should be granted in its favor against defendant Hench for breach of contract.[2] Dual-Temp asks this Court to apply California law to determine whether Hench, as a California resident and shareholder of Hench Corporation, should be held responsible for any liabilities and debts against Hench Corporation after its dissolution. Dual-Temp relies on California Corporations Code §§ 2001(c) and 2009(a) for its arguments that, as a shareholder, Hench had a duty to settle debts and claims against Hench Corporation and that any amounts improperly distributed to him during the dissolution of Hench Corporation may be recovered by Dual-Temp. Section 2001 of the California Corporation Code governs the powers and duties of the directors and officers after commencement of a dissolution proceeding.

---

[2] Although Count IV states that it is a claim for breach of contract, as previously discussed by Judge Dow at an earlier stage of the proceedings, this Court will treat Count IV as a claim for violations of Sections 2001 and 2009 of the California Corporations Code, and not as a breach of contract claim as labeled. *See Dual-Temp of Ill., Inc. v. Hench Control Corp.*, No. 09-cv-595, 2009 U.S. Dist. LEXIS 89088, at *12-13 (N.D. Ill. Sept. 28, 2009) (noting that "the dissonance between the label on a count and the allegations set forth within it does not bear on the analysis of Hench's motion to dismiss . . . . Therefore, the Court will analyze whether Plaintiff sufficiently stated claims for violation of Sections 2001 and 2009 of the California Corporation[s] Code"). Accordingly here, this Court analyzes whether there is any genuine issue of material fact concerning Dual-Temp's claim that Hench violated Sections 2001 and 2009 of the California Corporations Code.

One required duty is to "carry out contracts." Cal. Corp. Code § 2001(c). Section 2009 governs the recovery of improperly distributed assets made during the dissolution of a company. A plaintiff must show that (1) the corporation was in the process of winding up and (2) that a distribution of assets was made without prior payment or adequate provision for payment of any of the debts and liabilities of the corporation. Cal. Corp. Code § 2009(a). Section 2009 provides that "any amount so improperly distributed to any shareholder may be recovered by the corporation" and "any of such shareholders may be joined as defendants in the same action."

Hench argues that there is no evidence that he received any improper distributions of assets during or prior to Hench Corporation's dissolution. (Dkt. 185 at 5; Dkt. 186 at ¶¶ 4-5). In support of his contention, Hench cites to the deposition testimony of Dual-Temp's president, Steve Weinstein ("Weinstein"). In his deposition, Weinstein states that he had no evidence of Hench receiving any money from the sale of Hench Corporation to Caesar. (Weinstein Dep. 222:10-224:2). Dual-Temp disputes this assertion arguing that Hench admitted in his own deposition testimony that he received $140,000. (Dkt. 207 at 8). Dual-Temp argues further that there is a dispute as to what exactly Caesar acquired from the purchase agreement. (Dkt. 192 at ¶ 29).

Hench submitted a declaration after Dual-Temp filed its response to his motion for summary judgment stating that the $140,000.00 obtained was received on behalf of Hench Corporation and used to pay back creditors. (Dkt. 206, Ex. 2, Hench Decl. at 1-2). Dual-Temp argues that Hench's declaration about the money is unsubstantiated. Dual-Temp proffers no evidence that Hench received any assets personally, other than the following colloquy:

> Q: How much did you receive on the sale of [Hench Corporation]?
> A: There was an initial like down payment of $100,000, and then a buyout formula for over the next five years that was based on the revenue of the company.
> Q: And what did you receive?
> A: And there was one other.
> Q: Sorry.
> A: The third thing was the inventory at the time. The discounted value was 140-some-thousand dollars, and he had agreed to pay me for the inventory as he used it, and we put together a rough formula to make it approximately or close enough for what we wanted to burn through the inventory, and he paid 40-some-thousand of that and then stopped paying.
> Q: Did he pay the $100,000 down payment?
> A: He did.
> Q: So you received $140,000.

5

      A: Yes.
      Q: Have you received anything else?
      A: No.

(Hench Dep. 53:23-54:21). Deposition testimony must be taken within context to avoid misinterpretation. *See Baldonado v. Wyeth*, 04 C 4312, 2012 U.S. Dist. LEXIS 83018, at *9-10 (N.D. Ill. June 15, 2012) (rejecting defendant's motion for summary judgment where defendant relied on plaintiff's deposition testimony presented out of context). While parties cannot defend a summary judgment motion by "creating 'sham' issues of fact with affidavits that contradict their prior testimony," subsequent affidavits may be considered if they are offered to clarify ambiguous or confusing testimony or are based on newly discovered evidence. *Bank of Illinois v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162, 1168, 1171-72 (7th Cir. 1996). Here, Hench's declaration merely clarifies that when asked "so *you* received $140,000" in the sale of Hench Corporation, Hench understood the question to reference how much Hench Corporation received from the sale of assets and not how much he received personally from the sale. (Dkt. 206, Hench. Decl. at 1-2). This clarification is consistent with Hench's remaining deposition testimony and the context within which the statement was made. Accordingly, Dual-Temp's § 2009 claims are dismissed.

      Next, Hench argues that Dual-Temp's § 2001 claim is time barred. (Dkt. 185 at 5). Hench argues that Dual Temp's § 2001 claim is barred by the applicable six month statute of limitations under the California Code of Civil Procedure and that the act of selling Hench Corporation is protected under the business judgment rule. (Dkt. 185 at 6). Dual-Temp argues that the six month statute of limitations is inapplicable here, citing the case *Capuccio v. Claire,* 189 Cal. 514 (Cal. 1922). (Dkt. 207 at 7-8). *Capuccio*, however, does not support Dual-Temp's proposition. In *Capuccio*, because the six month statute of limitations was a recent amendment to Cal. Code Civ. P. § 341(3), the court decided not to apply it in that case. *Capuccio,* 189 Cal. 514, 519 (Cal. 1922). The court noted that "a reasonable time had not elapsed between the adoption of [the] amendment and the institution of that action." *Id*. *Capuccio* does not stand for the proposition that the generally applicable six month statute of limitations is inapplicable nor does Dual-Temp proffer any legitimate reasons why the statute of limitations should be set aside in this case. Therefore, the Court finds that any claims alleged pursuant to California Corporations Code § 2001 are time barred. Accordingly, Hench's motion for summary

judgment regarding Dual-Temp's § 2001 and § 2009 claims is granted and Count IV is dismissed.

       3. *Count V: Breach of Implied Warranty of Fitness*

Dual Temp moves for summary judgment on its claim for breach of implied warranty against Hench and Hench Corporation. Dual Temp argues that the refrigeration control system provided by Hench Corporation was not fit for its intended purpose and that Hench and Hench Corporation knew that Dual Temp was relying on them to provide a control system that would work at Home Run's production facility. (Dkt. 191 at 15). Hench and Hench Corporation argue that summary judgment should be entered in their favor because under the UCC a buyer cannot bring a breach of warranty claim if the buyer never accepted the goods. (Dkt. 185 at 14).

As an initial matter, Dual-Temp's breach of implied warranty of fitness claim against Hench in his individual capacity must be dismissed. Dual-Temp admits that it never entered into a contract with Hench in his personal capacity, but argues that Hench should be held liable for any debts or breaches by Hench Corporation. (Dkt. 209 at ¶ 7). As discussed previously, Dual-Temp's attempt to hold Hench personally liable pursuant to the California Corporations Code fail and are time barred. Therefore, any claims against Hench in his individual capacity for breach of implied warranty of fitness fail as well. Accordingly, Hench's motion for summary judgment as to Dual-Temp's implied warranty of fitness claim is granted. The remaining implied warranty of fitness allegation concerns solely Hench Corporation.

The parties do not dispute that Illinois law applies to Dual-Temp's breach of implied warranty claim. In order for Dual-Temp to recover for a breach of an implied warranty of fitness for a particular purpose, Dual-Temp must show: (1) a sale of goods; (2) the seller had reason to know of any particular purpose for which the goods are required; (3) the buyer of goods was relying on the seller's skill or judgment in selecting the goods; and (4) the goods were not fit for the particular purpose for which they were used. *Federal Ins. Co. v. Village of Westmont*, 271 Ill. App. 3d 892, 897 (Ill. App. Ct. 2d Dist. 1995). Illinois state and federal courts have not explicitly addressed whether acceptance is required in order to bring a breach of warranty claim. Hench Corporation cites to cases from outside this Circuit and argues that a breach of warranty claim can only be brought after acceptance. (Dkt. 185 at 14). To the extent that Illinois courts have dealt with breach of warranty and acceptance issues, Illinois courts have simply held that "a buyer who has accepted the goods and given proper notice may recover damages for breach of

warranty." *J. D. Pavlak, Ltd. v. William Davies Co.*, 40 Ill. App. 3d 1, 5 (Ill. App. Ct. 1st Dist. 1976).

Both Illinois statutes and the UCC provide that a buyer may respond to a seller's delivery of non-conforming goods by accepting, rejecting, or revoking acceptance of the goods. The buyer's response dictates the remedies available to him. *See* White and Summers § 10-1 at 702-03 (5th ed. 2006). Indeed, the remedies afforded a buyer when a seller fails to deliver or when the buyer rightly rejects or revokes acceptance of delivered goods are different from the remedies afforded a buyer when a buyer accepts the goods, does not reject or revoke acceptance, but sues for damages because the accepted goods are not as warranted. *Id*. The rights of a buyer who has accepted nonconforming goods is governed by § 810 ILCS 5/2-714 (breach of warranty) and the rights of a buyer who has either rejected or revoked acceptance is governed by §§ 810 ILCS 5/2-711 (buyer's remedies in general where there is no acceptance), 810 ILCS 5/2-712 (cover damages), and 810 ILCS 5/2-713 (contract-market damages). Furthermore Illinois statutes and the UCC provide that "the measure of damages for breach of warranty is the difference at the time and place of *acceptance* between the value of the goods *accepted* and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." § 810 ILCS 5/2-714 (emphasis added). Accordingly, acceptance is a requirement for a breach of warranty claim.

Here, Hench Corporation argues that there is no dispute between the parties that Dual-Temp did not accept the refrigeration system. Indeed, Dual-Temp states in its brief that "neither [Home Run] nor Dual-Temp accepted the [refrigeration] control system." (Dkt. 191 at 3). Therefore, there is no issue of material fact concerning Dual-Temp's acceptance and Hench Corporation's motion for summary judgment as to Count V is granted. Accordingly, Count V is dismissed in its entirety.

B. *Counts II & III: Dual-Temp v. Caesar & Hench Inc.*

Dual-Temp moves for summary judgment on Counts II and III. Count II alleges breach of contract against Hench Inc. Count III alleges breach of contract against Caesar. Dual-Temp argues that Caesar and Hench Inc. should be held liable for either expressly or impliedly assuming Hench Corporation's liabilities when they purchased Hench Corporation's assets. Caesar and Hench Inc. argue that they were not assigned, either expressly or impliedly, Hench Corporation's duties to Dual-Temp.

*1. Counts II & III: Breach of Contract Against Caesar & Hench Inc.*

The parties do not dispute that California law governs the asset purchase agreement. Under California law, generally "where one corporation sells or transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the former unless (1) the purchaser expressly or impliedly agrees to such assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is merely a continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape liability for debts." *Franklin v. Usx Corp.*, 87 Cal. App. 4th 615, 621-623 (Cal. App. 1st Dist. 2001); see *also Ray v. Alad Corp.*, 19 Cal. 3d 22, 28 (Cal. 1977).

The asset purchase agreement provided for the sale of Hench Corporation assets including "inventory." (Dkt. 191 at 10-11; Ex. 23). "Inventory" is further defined in the contract as "current raw materials, work in progress, saleable finished goods and conditions set forth in the Agreement." (Dkt. 191 at 11; Ex. 23). Dual-Temp argues that its contract with Hench Corporation for the control system was a "work in progress" that was purchased by Caesar and Hench Inc. as "inventory" from Hench Corporation. (Dkt. 191 at 11; Ex. 23). Caesar and Hench Inc. argue that a better reading of the contract would limit the meaning of the term "inventory" to goods as provided in Black's Law Dictionary. (Dkt. 201 at 8-9). Under California law, whether a contract is ambiguous is a question of law. *Irving v. Ebix Software India Private Ltd.*, No. 10-CV-762 JLS (BLM), 2011 U.S. Dist. LEXIS 39467, at *10-11 (S.D. Cal. Apr. 12, 2011) (noting that "under California law, contract interpretation is a question of law" and that "in interpreting the contract, a court must first determine whether the contract is ambiguous"). However, if the terms of the contract are ambiguous or uncertain, determining the contract's terms is a question of fact for the trier of fact. *Cotran v. Rollins Hudig Hall Internat., Inc.*, 17 Cal. 4th 93, 112 (Cal. 1998). Here, the language of the purchase agreement itself is ambiguous as to the meaning of the terms "work in progress" and "inventory."

Dual Temp argues that the first exception, where a purchaser expressly or impliedly agrees to the assumption of liability, is applicable here. (Dkt. 191 at 10). Upon review of the purchase agreement the only language found concerning the assumption of liabilities provides that "unless specified to the contrary in this Agreement (See Exhibit C) this sale expressly excludes any debt or other liabilities . . . ." (Dkt. 191 at 10-11; Ex. 23). Exhibit C, labeled "Schedule of Assumed Liabilities and Encumbrances," contains a chart/list of all payables for

which Caesar assumed liability and, notably, does not include the contract between Dual-Temp and Hench Corporation. (Dkt. 191 at 10-11; Ex. 23).

Accordingly, the purchase agreement does not expressly provide that Caesar or Hench Inc. assumed the liabilities of Hench Corporation to Dual-Temp. While Dual-Temp argues for a reading of the purchase agreement such that its contract with Hench Corporation was assumed as "inventory," the precise meaning of this term and whether the parties intended for Dual-Temp's contract to be assumed is ambiguous at best. Moreover, the only express terms in the purchase agreement concerning the assumption of liabilities do not provide for the assumption of Dual-Temp's contract with Hench Corporation. To the contrary, those terms exclude any debts or other liabilities not expressly mentioned.

Dual-Temp argues that, even if this Court finds that the purchase agreement did not specifically assign the obligations under the Dual-Temp/Hench Corporation contract to Caesar and Hench Inc., Caesar and Hench Inc. by their actions impliedly assumed Hench Corporation's liabilities. As evidence of Caesar's implicit assumption of liability, Dual-Temp cites to the fact that Caesar sent personnel to Home Run to try to fix the control system failure. Dual-Temp also cites to the fact that Hench Inc. attempted to collect the last 10% installment payment due under the purchase price of the control system from Dual-Temp. (Dkt. 191 at 11-13). Caesar and Hench Inc. argue that they were not assigned Hench Corporation's duties under the purchase agreement. Furthermore, Caesar and Hench Inc. maintain that they attempted to resolve the control system failure because they were concerned about the reputation of the "Hench" name even though they were not bound by Hench Corporation's contract with Dual-Temp.

The question of implied assumption of liability is a fact specific question, rather than a purely legal issue. *Louisiana-Pacific Corp. v. Asarco, Inc.*, 909 F.2d 1260, 1264 (9th Cir. 1990). This Court may look to the conduct of the parties to determine whether liability was implicitly assumed. *See Truck Ins. Exchange v. Amoco Corp.*, 35 Cal. App. 4th 814, 826-827 (Cal. App. 2d Dist. 1995) (holding that where the record "discloses neither an express or oral agreement, nor conduct on the part of [the defendant] from which it can be implied that [the defendant] intended to assume [plaintiff's] liabilities" there was no explicit or implicit assumption of liability.). Here, there is an issue of material fact as to whether Caesar and Hench Inc. impliedly assumed the liabilities of Hench Corporation's contract with Dual-Temp. Accordingly all motions for summary judgment as to Counts II and III are denied.

**Conclusion**

For the abovementioned reasons Hench's motion for summary judgment regarding Counts IV and V is granted. Hench Corporation's motion for summary judgment as to Count V is granted. All other motions for summary judgment concerning the remaining counts are denied.

IT IS SO ORDERED.

_____
Date: February 6, 2013

_____
Sharon Johnson Coleman
United States District Judge